UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BRENT ROWDEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 1:23-CV-362-HAB |
| WALMART, INC., | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Plaintiff believes that he was terminated from his employment with Defendant after challenging a disciplinary write-up. Although he admits he was an at-will employee, he sued Defendant alleging state-law claims for breach of contract and promissory estoppel. (ECF No. 5). Defendant removed the case to this Court (ECF No. 1) and moved to dismiss (ECF No. 25). Because the Court finds that Plaintiff has pleaded enough, the motion will be denied.

**I.      Factual Background**

Plaintiff began working for Defendant in October 2017. At some point, he was disciplined. He challenged the discipline, all the way to Defendant's CEO. That challenge was apparently a victory, though a Pyrrhic one. Plaintiff alleges he was fired in January 2023 for challenging the discipline.

At the time Plaintiff challenged the discipline, Defendant had in place a "Speak Without Fear of Retaliation" policy ("Policy"). The Policy stated:

> Walmart does not tolerate retaliation for reporting a concern or participating in an investigation. Any associate who engages in retaliation will be subject to disciplinary action. If you feel that you have been retaliated against for reporting a concern, contact your People Lead or Ethics & Compliance.

> We know it takes courage to come forward and share your concerns. Discouraging associates from reporting an ethics concern is prohibited and could result in disciplinary action. When we speak out against things that are wrong, we uphold our values and Code. ***Reporting an issue in good faith will not get you in trouble, even if you make an honest mistake***. Knowingly reporting false information is contrary to our values and will be subject to disciplinary action.
>
> We appropriately investigate reports of misconduct. We share information only on a need-to-know basis. If you are asked to participate in an investigation, give honest and complete answers.

(ECF No. 26-1 at 12) (emphasis added).

## II.  Legal Analysis

### A.  *Motion to Dismiss Standard*

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B.  *Breach of Contract*

The parties agree that Plaintiff was an at-will employee. They differ on whether the Policy changed that relationship. Defendant argues that it could not, relying on the Indiana Supreme Court's decision in *Orr v. Westminster Vill. N., Inc.*, 689 N.E.2d 712, 722 (Ind. 1997). Defendant

2

believes that *Orr* acts as a barrier to all claims that employer-adopted rules altered an at-will relationship, but the Court is not so sure.

Simply put, there are several ways to read *Orr*. There, Orr was fired after his employer found him in an attic, surrounded by marijuana smoke. He alleged that the firing violated the employer-issued handbook, which called for progressive discipline. While Orr conceded that he was an at-will employee, he argued to the Indiana Supreme Court that "the employment-at-will doctrine is harsh and outdated, and that [the Supreme Court] should construe the Handbook as a unilateral contract allowing Westminster to discharge [him] only for good cause." *Orr*., 689 N.E.2d at 719.

The first way to read *Orr* is that it dodged the question. The Indiana Supreme Court noted criticism of the at-will employment doctrine and ongoing litigation over whether an employee handbook could constitute an employment contract. It also noted that it had not directly addressed the question of "whether an employee handbook can ever constitute a unilateral contract serving to modify the otherwise at-will employment relationship." *Id*. at 719-20. It then stated, succinctly, that it would "decline plaintiffs' invitation to use this case as a vehicle for resolving these questions." *Id*. at 720. Pretty straightforward—the Indiana Supreme Court is not using *Orr* to decide whether an employee handbook can modify at-will employment.

Unfortunately, the Supreme Court did not stop there. It wrote another two pages, which give rise to two, alternate readings. The second way to read *Orr* is that it announced a standard for evaluating whether an employee handbook creates an employment contract. Citing *Duldulao v. St.*

*Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314 (Ill. 1987)[1], the Supreme Court noted that, under Illinois law,

> an employee handbook may constitute a unilateral contract and bind the employer if the following three criteria are met: (1) the language of the employee handbook must contain a promise clear enough that an employee would reasonably believe that an offer had been made; (2) the employee handbook must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing work after learning of the terms of the employee handbook.

*Orr*, 689 N.E.2d at 720. The Supreme Court then evaluated the employee handbook under those criteria, finding that it failed under the first element because there was "no clear promise to follow a progressive disciplinary approach." *Id*. at 721. The Supreme Court also noted that the handbook contained a disclaimer that it was "not a contract," that the handbook contained little more than "vague and general statements" that could not constitute a contract, and that Orr likely didn't comply with the grievance procedures in the handbook anyway. *Id*.

Then comes the conclusory paragraph, which permits the third, and Defendant's preferred, reading. After saying that they weren't going to resolve whether a handbook could modify at-will employment, and after then analyzing the handbook as if it could, under some circumstances, do just that, the Supreme Court wrote,

> We re-affirm the vitality of the employment-at-will doctrine in Indiana and the general rule that adequate independent consideration is necessary to convert an at-will relationship into an employment relationship requiring an employer to discharge an employee for good cause. We decline plaintiffs' invitation to construe employee handbooks as unilateral contracts and to adopt a broad new exception to the at-will doctrine for such handbooks.

---

[1] Defendant calls *Orr*'s discussion of *Duldulao* "dicta." (ECF No. 36 at 3). It probably is. But then again, everything after the Supreme Court's statement declining to resolve whether a handbook can alter the at-will relationship is probably dicta, including the conclusory paragraph that Defendant cites.

*Id*. at 722. Thus, the third way to read *Orr*: there is no exception to the at-will doctrine for employee handbooks.

Whatever the Indiana Supreme Court intended, the Court does not believe it was the complete prohibition advocated by Defendant. Later decisions by the Indiana Court of Appeals have focused on specific terms in a handbook, like disclaimers, *Uhlman v. Panares*, 908 N.E.2d 650, 655 (Ind. Ct. App. 2009), and language imposing mandatory procedures, *Duty v. Boys and Girls Club of Porter Cty.*, 23 N.E.3d 768, 772-74 (Ind. Ct. App. 2014). If *Orr* foreclosed any argument that a handbook could alter the at-will relationship, then an analysis of the language of individual handbooks would be unnecessary. The Seventh Circuit also has not interpreted *Orr* as an insurmountable barrier. *See Alley v. Penguin Random House*, 62 F.4th 358, 363-64 (7th Cir. 2023) ("It is unclear whether an employee handbook could ever constitute a unilateral contract and bind an employer under Indiana law.").

And if *Orr* doesn't foreclose Plaintiff's claim, then the only question for the Court is whether Plaintiff has pleaded enough facts to put Defendant on notice of a facially plausible claim. Plaintiff has pleaded a contract, breach by Defendant, and damages. (ECF No. 5 at 4). That is all that is required under Indiana law. *Hopper v. Colonial Motel Properties, Inc.*, 762 N.E.2d 181, 187 (Ind. Ct. App. 2002). Whether the Policy supports a breach of contract claim can be decided after discovery.

C.   ***Promissory Estoppel***

Defendant's attempt to dismiss Plaintiff's promissory estoppel claim is easier to address. The Indiana Supreme Court is clear that, no matter that Plaintiff is an employee at-will, he can bring a claim for promissory estoppel. *Jarboe v. Landmark Comm. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 122 (Ind. 1994) ("The doctrine of promissory estoppel may be available to an at-will

employee . . ."). So Defendant's primary argument, that Plaintiff's at-will status prevents him from showing detrimental reliance, is wrong. (ECF No. 36 at 5).

Defendant seems more concerned Plaintiff is seeking damages that may not be available in a promissory estoppel claim. (*Id*. at 6). That concern is valid, as *Jarboe* prohibits at-will employees from using "promissory estoppel as a basis for general wrongful discharge damages." *Jarboe*, 644 N.E.2d at 122. But there's no question that, if Plaintiff succeeds, he could recover "damages actually resulting from the detrimental reliance." *Id*. Any limitation on the damages Plaintiff can receive can be handled at trial.

### III.     Conclusion

For these reasons, Defendant's motion to dismiss (ECF No. 25) is DENIED.

SO ORDERED on April 24, 2024.

s/ *Holly A. Brady*  
CHIEF JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT